```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF RHODE ISLAND
_____
                                   )
ADRIANO DA SILVA MEDEIROS;         )
JOSE MARCOS PALACIOS MOLINA;       )
and LUIS ORLANDO DURAND LUYO;      )
                                   )
     Petitioners-Plaintiffs,       )
                                   )
     v.                            )    C.A. No. 20-178 WES
                                   )
DANIEL W. MARTIN, Warden,          )
Donald W. Wyatt Detention          )
Facility; CENTRAL FALLS            )
DETENTION FACILITY                 )
CORPORATION; MATTHEW ALBENCE,      )
Acting Director of U.S.            )
Immigration and Customs            )
Enforcement; and TODD LYONS,       )
Acting Field Office Director,      )
U.S. Immigration and Customs       )
Enforcement,                       )
                                   )
     Respondents-Defendants.       )
_____)
```

## **MEMORANDUM OF DECISION**

Jose Marco Palacios Molina and Luis Orlando Durand Luyo ("Petitioners") are civil detainees held at the Donald W. Wyatt Detention Facility ("Wyatt") in Central Falls, Rhode Island. See generally Mem. Law Supp. Pet'rs-Pls.' Mot. TRO and/or Prelim. Injunctive Relief ("Pet'rs' Mem."), ECF No. 10-1. On April 18, 2020, they filed an emergency petition for a writ of habeas corpus seeking declaratory and injunctive relief relating to the conditions of their confinement during the COVID-19 pandemic. See generally Compl., ECF No. 1. The next day, on April 19, 2020,

Petitioners moved: (1) to enjoin Defendant-Respondents ("Respondents") from transferring them outside this Court's jurisdiction throughout this action; and (2) for their immediate release from Wyatt. See generally Pet'rs' Mot. TRO and/or Prelim. Injunctive Relief, ECF No. 10.

On April 22, 2020, this Court held a hearing on the Motion. In the interim, U.S. Immigration and Customs Enforcement ("ICE") released Petitioner Adriano da Silva Medeiros from Wyatt, see Status Report Concerning Petitioner Medeiros, ECF No. 18; this Motion is therefore DENIED AS MOOT related to him.

On April 24, 2020, this Court issued an Order GRANTING Petitioners' Motion as to the remaining two Petitioners. See Apr. 24, 2020 Order ("Order"), ECF No. 24. This Memorandum of Decision further explains the reasons for the Court's decision.

I.   Discussion

Courts award preliminary injunctions or temporary restraining orders upon a showing of "(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." NuVasive, Inc. v. Day, 954 F.3d 439, 443 (1st Cir. 2020) (quoting Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003)); see also Harris v. Wall, 217 F. Supp. 3d 541, 552 (D.R.I. 2016) (recognizing the test for a preliminary

injunction is the same as the test for a temporary restraining order).

    A.   Irreparable Harm

Information about COVID-19 is rapidly evolving, but this much is known: the World Health Organization (the "WHO") and the Centers for Disease Control (the "CDC") have identified certain underlying medical conditions, including diabetes and asthma, that increase the risk of severe complications or death upon contracting COVID-19. See Decl. of Joseph J. Amon, Ph.D. MSPH ("Amon Decl.") ¶¶ 7-8, ECF No. 1-7 (citing the WHO and the CDC); see also Decl. of Dr. Jonathan Louis Golob ("Golob Decl.") ¶ 3, ECF No. 1-6. In the event of infection, advanced life support is necessary for these riskier populations, including "positive pressure ventilation, and in extreme cases, extracorporeal mechanical oxygenation." Golob Decl. ¶ 8. "[A] prolonged recovery is expected" for this population, "including the need for extensive rehabilitation for profound deconditioning, loss of digits, neurological damage, and loss of respiratory capacity". Id. ¶ 4. Although difficult to quantify, Petitioners cite data that the fatality rate among the riskiest population is about fifteen percent. See id. At present, there is no known preventative treatment or cure. Id. ¶ 10.

Each Petitioner is diagnosed with a CDC-recognized underlying health condition that makes him especially susceptible to risks associated with complications of COVID-19. See id. ¶ 14; Decl. of

3

Elizabeth Toll, M.D. ("Toll Decl.") ¶ 7, ECF No. 1-5. Petitioner Palacios Molina is diagnosed with diabetes. Pet'rs' Mem. 18; Decl. of Jose Marcos Palacios Molina ¶¶ 5-7, ECF No. 1-2. Petitioner Durand Luyo has severe asthma, as well as potential lung impairment. Pet'rs' Mem. 18; Decl. of Luis Orlando Durand Luyo ¶¶ 4-6, ECF No. 1-3. Respondents do not contest that these conditions leave Petitioners vulnerable if they are exposed to COVID-19. See Basank v. Decker, No. 20 Civ. 2518 (AT), 2020 WL 1481503, at *4 (S.D.N.Y. Mar. 26, 2020) (noting that those rendered vulnerable by underlying medical conditions identified by the CDC are at a heightened risk of "particularly acute" and constitutionally significant health risks); see also Valenzuela Arias v. Decker, No. 20 Civ. 2802 (AT), 2020 WL 1847986, at *5 (S.D.N.Y. Apr. 10, 2020) (same) (citing cases).

It is also well known that congregate living, such as nursing homes, cruise ships, aircraft carriers, and that at Wyatt and other detention facilities and prisons, magnifies the risk of contracting COVID-19. Toll Decl. ¶ 5; Decl. of Dr. Dora Schriro ("Schriro Decl.") ¶ 17, ECF No. 10-2; Valenzuela Arias, 2020 WL 1847986, at *4 (highlighting "the threat that COVID-19 poses to individuals held in jails and other detention facilities." (citing cases)); United States v. Nkanga, No. 18-CR-713 (JMF), 2020 WL 1529535, at *1 (S.D.N.Y. Mar. 31, 2020), reconsideration denied, No. 18-CR-713 (JMF), 2020 WL 1695417 (S.D.N.Y. Apr. 7,

4

2020) ("Those detained in jails and prisons face particularly grave danger."). As of the Order, Wyatt had confirmed one case, and sixty-five detainee tests pending. See ICE Resp'ts' Opp'n to Appl. for TRO and Pet. for Writ of Habeas Corpus ("Gov't Opp'n") Ex. A ("Apr. 21 Status Report"), ECF No. 21-2; see also Apr. 23 Status Report 1, available at https://www.rid.uscourts.gov/re-donald-w-wyatt-detention-center-20-mc-00004-jjm (last visited Apr. 30, 2020). Petitioners submit data reflecting the potential for exponential rate of transmission in these facilities. See Golob Decl. ¶ 12 (describing that, over twelve days, the number of confirmed cases at a jail complex in New York City rose from one to nearly 200). Now, at the time of the issuance of this Memorandum, nine detainee cases have been confirmed and twenty tests are still outstanding. Apr. 30 Status Report 1, available at https://www.rid.uscourts.gov/re-donald-w-wyatt-detention-center-20-mc-00004-jjm (last visited Apr. 30, 2020).

Acknowledging this increased risk and adhering to CDC guidance, Wyatt has taken considerable steps to control the rate of infection. See generally Apr. 21 Status Report. The facility is operating at around 75 percent capacity, having released or transferred over 100 detainees. Id. at 1, 3. It has implemented practices through which recommended social-distancing measures may be followed more faithfully. Id. at 3-6. For example, detainees are directed not to congregate in groups. Id. at 3; Decl. of

Daniel W. Martin ("Martin Decl.") ¶¶ 11-14, ECF No. 21-3.  Wyatt is also allowing detainees some flexibility so they can maintain distance, including granting additional access to the recreation yard and permission to eat meals in their cells.  Apr. 21 Status Report 3; Martin Decl. ¶¶ 11-14.  New detainees are medically screened for symptoms and Wyatt has shown a plan of action for confirmed cases.  Apr. 21 Status Report 4, 6-9; Suppl. Decl. of Daniel W. Martin ("Martin Suppl. Decl.") ¶ 6, ECF No. 12-1 (describing quarantine measures for new detainees); see Apr. 23 Status Report 6-8 (describing 16-day quarantine process for new detainees); id. at 8-9 (overviewing protocols in the event of a positive case).  The facility has also taken steps to supplement its sanitization practices.  Apr. 21 Status Report 4-5, 10-11; Martin Decl. ¶ 6, 22-28.  It recently conducted facility-wide health screenings.  See Apr. 23 Status Report 16.

But implementation of these measures has not been without difficulty.  For example, Wyatt has had trouble obtaining hand sanitizer in the market.  Apr. 21 Status Report 10; Martin Decl. ¶ 6.  Social-distancing practices, such as maintaining at least six feet of distance between persons, cannot be guaranteed.  See, e.g., Schriro Decl. ¶¶ 24, 40 (describing ICE proposition that, "for all those who remain detained, 'wherever possible, all staff and detainees should maintain a distance of six feet from one another' and otherwise adhere to CDC guidelines, where

practicable") (emphasis added). Additionally, Petitioners, through their declarations, raise doubts that Wyatt's measures are consistently practiced. See, e.g., Suppl. Decl. of Luis Orlando Durand Luyo ("Durand Luyo Suppl. Decl.") ¶¶ 4-9, ECF No. 19-3; Suppl. Decl. of Jose Marcos Palacios Molina ("Palacios Molina Suppl. Decl.") ¶¶ 3-12, ECF No. 19-4.

Nor can Wyatt effectively screen out potentially infected persons from entering the facility. See Schriro Decl. ¶¶ 16, 24; Apr. 21 Status Report 4. Although Wyatt staff are directed to refrain from entering the facility if they exhibit symptoms of COVID-19, this does not control for either asymptomatic or pre-symptomatic transmission. See Apr. 21 Status Report 4; Second Declaration of Joseph J. Amon, Ph.D., MSPH ("Amon Second Decl.") ¶ 9, ECF No. 19-1 (describing that best practices, given asymptomatic and pre-symptomatic transmission, is to test staff and detainees often); Golob Decl. ¶ 6. And while vendors and contractors now are allowed only limited access to the facility, some access is necessary and unavoidable. See Apr. 21 Status Report 5. Wyatt's efforts are hindered even more by the national and, thus, facility shortage of testing. See Amon Second Decl. ¶ 9-10 (addressing the lack of testing and summarizing that Wyatt admits it lacks adequate testing "on hand"). To date, it has tested ninety-six detainees up from just three last week. Apr. 30 Status Report 1; Apr. 23 Status Report 1; see Golob Decl. ¶ 7

7

(highlighting that a lack of proven COVID-19 cases is "functionally meaningless" to evaluate risk of transmission where there is a lacking "comprehensive and rigorous testing regime"). But see Apr. 23 Status Report 17 (explaining Wyatt is working with the Rhode Island Department of Health to facilitate staff testing at local sites).

The cumulative effect of these unknowns leads to the conclusion that Wyatt's current precautions cannot absolutely "identify infected individuals and ensure that they do not come into contact with other people living and working in" the facility. Schriro Decl. ¶ 41; cf. Dawson v. Asher, No. C20-0409JLR-MAT, 2020 WL 1304557, at *3 (W.D. Wash. Mar. 19, 2020) (finding no likely irreparable injury where the petitioners did not point to evidence of an outbreak or inadequate precautionary measures). Petitioners are especially vulnerable to not only risk of infection as detainees in a congregate living facility, Valenzuela Arias, 2020 WL 1847986, at *5, but also to risk of serious complications as members of the medically vulnerable population. See Amon Decl. ¶¶ 7-8; Golob Decl. ¶ 3; Toll Decl. ¶ 7-9. And "it is more than mere speculation that the virus will continue to spread and pose a danger" absent further efforts to "stop the spread". Wilson v. Williams, No. 4:20-CV-00794, 2020 WL 1940882, at *9 (N.D. Ohio Apr. 22, 2020).

The Court does not doubt that Wyatt's precautions may be adequate to ensure the safety of many if not most detainees, but that is not the question presently before the Court. Because these Petitioners' health issues distinguish them from a typical detainee, see generally Toll Decl., measures designed to mitigate the spread of infection, even perfectly executed, are inadequate to protect vulnerable persons like them. See, e.g., Schriro Decl. ¶ 16 (summarizing opinion that ICE's plans are generally inadequate); see Basank, 2020 WL 1481503, at *5 ("These measures are patently insufficient to protect Petitioners."). The Court thus concludes that Petitioners, absent the requested relief, are at a significant risk of irreparable harm.

B. Substantial Likelihood of Success on the Merits

In their Petition, Petitioners marry their allegations of unconstitutional conditions of confinement to due process guarantees. Pet'rs' Mem. 22. The Due Process Clause of the Fifth Amendment to the United States Constitution forbids the government from depriving a person of life, liberty, or property without due process of law. U.S. Const. amend. V. Liberty interests are implicated when a pretrial detainee claims "he has been subjected to unconstitutional conditions of confinement." Surprenant v. Rivas, 424 F.3d 5, 18 (1st Cir. 2005). Implicit in any detention is a constitutionally imposed duty to provide minimum necessities, including those "basic human needs—e.g., food, clothing, shelter,

9

medical care, and reasonable safety". DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 200 (1989).

Without a conviction, conditions of confinement may not "amount to punishment of the detainee." Bell v. Wolfish, 441 U.S. 520, 535 (1979); Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473-74 (2015); see also Banks v. Booth, No. CV 20-849(CKK), 2020 WL 1914896, at *5 (D.D.C. Apr. 19, 2020). Conditions are constitutional, and not an unconstitutional punishment, so long as they are "reasonably related to a legitimate governmental objective." Bell, 441 U.S. at 539; see also Youngberg v. Romeo, 457 U.S. 307, 322 (1982); E.D. v. Sharkey, 928 F.3d 299, 307 (3rd Cir. 2019).

Petitioners must prove that Respondents' conduct is "'not rationally related to a legitimate governmental objective or that it [was] excessive in relation to that purpose.'" Miranda-Rivera v. Toledo-Davila, 813 F.3d 64, 70 (1st Cir. 2016) (quoting Kingsley, 135 S. Ct. at 2473-74) (analyzing claim of excessive force); see also Banks, 2020 WL 1914896, at *5. At this stage, Petitioners have the burden of showing a likelihood of success in proving that Respondents' conduct is "objectively unreasonable". Kingsley, 135 S. Ct. at 2473-74. Both parties agree that "objective unreasonableness" is the appropriate benchmark.[1]

---

[1] The parties' briefing also analyzes the stricter "deliberate indifference" standard born from the Eighth Amendment;

10

Viewed through this "objective unreasonableness" prism, the Court finds that Petitioners have met their burden. As detailed above, Petitioners have established not only that Wyatt's congregate living increases Petitioners' risk of contracting COVID-19, but also, and of greater constitutional significance, that their underlying medical conditions increase their risk of severe complications of COVID-19. See Golob Decl. ¶ 14; Toll Decl. ¶ 7; see Banks, 2020 WL 1914896, at *6 (articulating the standard for pretrial detainees as whether the respondents "knew or should have known that the jail conditions posed an excessive risk to their health"); see also Savino v. Souza, No. 20-10617-WGY, 2020 WL 1703844, at *7 (D. Mass. Apr. 8, 2020) (applying the Eighth Amendment, hypothesizing that "it may be easier for [d]etainees who are at heightened risk of harm from COVID-19 to prove the 'substantial risk of serious harm' prong of the inquiry than it will be for healthier [d]etainees who lack special risk factors.").

At this point, "[t]he risk of contracting COVID-19 in tightly-confined spaces, especially jails, [is] 'exceedingly obvious.'" Valenzuela Arias, 2020 WL 1847986, at *6 (quoting Basank, 2020 WL 1481503, at *5); Pet'rs' Mem. 18-19 (describing that Respondents learned of the vulnerability of high-risk detainees); id. at 28-

---

the Court need not reach this issue inasmuch as the parties agreed at the hearing "objective unreasonableness" is the applicable standard. See Gov't Opp'n 8-9; Pets' Mot. 22-23.

11

31 (detailing direct and circumstantial evidence supporting that Respondents are aware of the risk to Petitioners). Moreover, courts have held that precautions failing to ensure reasonable safety cannot be reasonable. See Zaya v. Adducci, No. 20-10921, 2020 WL 1903172, at *5 (E.D. Mich. Apr. 18, 2020) (citing Helling v. McKinney, 509 U.S. 25, 33 (1993)) (analyzing the petitioner's claim under the Eighth Amendment).

To be clear, the Court is not holding that "the fact of detention itself [is] an 'excessive' condition solely due to the risk of a communicable disease outbreak . . . ." Dawson, 2020 WL 1304557, at *2. Rather, the Court is persuaded by Petitioners' evidence that COVID-19 has infiltrated Wyatt, and that Wyatt's increased precautions, although addressing generalized needs of detainees, "do nothing to alleviate the *specific, serious*, and *unmet* medical needs of the[se] high-risk detainees, who require greater precautions in light of their correspondingly greater risk of *severe* illness if they contract COVID-19." Barbecho v. Decker, No. 20-cv-2821 (AJN), 2020 WL 1876328, at *2, 5 (S.D.N.Y. Apr. 15, 2020) (emphasis in original) (analyzing Eighth Amendment guarantees by way of the deliberate indifference standard cognized through the Due Process Clause). Accordingly, the Court is satisfied that Petitioners have shown a likelihood of success of showing Respondents' COVID-19 precautions are objectively unreasonable as to these particular Petitioners. See

Amon Second Decl. ¶ 8 (underscoring the paucity of measures designed to identify high-risk detainees and to protect them from contracting COVID-19).

   C.   Balancing Hardships and Public Interest

   Analyzing the final two requirements together, both a balance of the hardships and an evaluation of the public interest favor Petitioners.  Respondents cite public and governmental interests in enforcement of immigration law generally, enforcement of prompt removal orders, and, specific here, assurance of Petitioners' appearance at future proceedings.  Gov't Opp'n 15.  Relevantly, Petitioner Palacios Molina's appeal to the Board of Immigration Appeals remains pending.  <u>See</u> Decl. of Assistant Field Office Director Alan Greenbaum ("Greenbaum Decl.") ¶ 18, ECF No. 21-1. But the Court is satisfied that Respondents have alternative means to ensure these interests, including, for example, electronic monitoring mechanisms.  <u>See</u> Schriro Decl. ¶¶ 42-47.

   As Petitioners highlight, Respondents have historically exercised their discretion to release medically vulnerable detainees.  Pet'rs' Mem. 35; Schriro Decl. ¶ 22.  And, in these recent times, courts have also "found a significant public interest in releasing ill and aging detainees and have accordingly ordered immediate release."  <u>Bent v. Barr</u>, No. 19-CV-06123-DMR, 2020 WL 1812850, at *7 (N.D. Cal. Apr. 9, 2020) (citing cases).  Further, the Court is only minimally concerned about flight risk in light

13

of the present circumstances and is persuaded that any lingering concerns can be addressed through conditions of release. See Schriro Decl. ¶ 52 (opining that medically vulnerable individuals "are unlikely to pose significant flight or public safety threats if they were released under conditions consistent with objective assessments of risk"); see also Doe v. Barr, No. 20-cv-02141-LB, 2020 WL 1820667, at *11 (N.D. Cal. Apr. 12, 2020) (noting that "the global pandemic is changing behavior and the way courts assess risk of flight and community safety").

As to public safety, Durand Luyo has a considerable criminal history. See Greenbaum Decl. ¶ 7. Most recently, he was arrested for simple assault domestic violence and assault with a dangerous weapon; this charge remains pending. See id. ¶ 12; Durand Luyo Suppl. Decl. ¶ 10. Palacios Molina also has a criminal history. See Greenbaum Decl. ¶¶ 17, 19-23. Within the last year, he too was arrested for domestic assault and battery, as well as assault to rape. See Greenbaum Decl. ¶¶ 22-23; Palacios Molina Suppl. Decl. ¶¶ 14-17. This arrest resulted in a restraining order expiring in February of this year; only the domestic assault and battery charge remains pending. See Greenbaum Decl. ¶¶ 22-23; Palacios Molina Suppl. Decl. ¶¶ 14-17. And while Respondents raise concerns about public safety given these criminal histories, Gov't Opp'n 15-16, the Court's conditions of release set forth in the Order are designed to confront these concerns, especially with

14

respect to the recent allegations of domestic violence. Other courts have proceeded similarly in recognition of "the shifting nature of these interests in light of the COVID-19 pandemic." Bent, 2020 WL 1812850, at *7.

Petitioners submit that limiting spread of the infection — both within Wyatt and outside it — is of utmost importance, emphasizing again the difficulty of practicing proactive measures in the facility. Pet'rs' Mem. 33-35. The Court agrees that taking efforts to contain the infection rate in turn limits the burden on the healthcare system; "[g]iven that additional burdens on the health system in this crisis may lead to a greater number of deaths among the public, public health considerations cannot be ignored in assessing an individual's risk to the community." Bent, 2020 WL 1812850, at *7; Pet'rs' Mem. 34. On balance, the Court finds these final requirements favor Petitioners.

D. Release Plans

The Court incorporates herein the conditions it imposed in its Order issued April 24, 2020.

E. Bond

Having determined that Petitioners are entitled to relief, the Court exercises its discretion to waive the bond requirement embedded in Rule 65(c) of the Federal Rules of Civil Procedure. See Crowley v. Local No. 82, Furniture & Piano Moving, Furniture

15

<u>Store Drivers, Helpers, Warehousemen, & Packers</u>, 679 F.2d 978, 1001 (1st Cir. 1982), <u>rev'd on other grounds</u>, 467 U.S. 526 (1984).

The Court finds that a bond requirement would pose a hardship on Petitioners, as individuals, in this suit against Respondents. <u>See</u> <u>id.</u> at 1000 (directing courts to consider the relative positions of the parties). The Court further finds that requiring bond would unduly restrict the federal rights at issue. <u>See</u> <u>id.</u> The bond requirement is therefore waived.

II. Conclusion

For the foregoing reasons, the Court GRANTED Petitioners' Motion, ECF No. 10, except that the Court DENIED AS MOOT the Motion as it related to Petitioner Adriano da Silva Medeiros. The Court ordered Petitioners to follow the procedures and conditions outlined in this Court's April 24, 2020 Order. The Court also waived the bond requirement.

IT IS SO ORDERED.

*/s/ WESmith*

William E. Smith
District Judge
Date: May 1, 2020

16